UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELAINE PETRONE,<br><br>                              Plaintiff,<br><br>   -against-<br><br>TURNER PUBLISHING COMPANY LLC, et al.,<br><br>                            Defendants. | 22-cv-2698 (AS)<br><br>MEMORANDUM OPINION<br>AND ORDER |

ARUN SUBRAMANIAN, United States District Judge.

## BACKGROUND

Plaintiff Elaine Petrone is the creator of the "Miracle Ball Method," a technique for relieving chronic pain by "position[ing] the body on inflatable plastic balls." Second Am. Compl. ¶ 9, Dkt. 63. A few years ago, she partnered with Defendant Turner Publishing to publish a series of books about the method. ¶ 15.

The complaint focuses on the publication process for the second book. Turner's outside editor suggested substantial changes, some of which "introduced inaccuracies." ¶ 20. Petrone incorporated many of the suggestions nonetheless, reworking much of the book. ¶ 21. Despite these efforts, Turner was not satisfied. It thought Petrone's work was "substandard" and "might not be the best fit" for the company. ¶ 22. Turner's CEO suggested that the parties consider canceling their agreement. *Id.* Petrone declined. ¶ 24. But at the same time, Turner was undergoing a corporate realignment. Unfortunately for Petrone, one of the terminated employees was the Turner editor who had "acquired the [Miracle Ball Method] project for Turner, assisted in the negotiation of the Turner agreement, and remained Petrone's chief sponsor and advocate with Turner." ¶ 23.

Later that year, Turner told Petrone that the second book would be published in about six weeks. ¶ 25. Petrone asked to see the final manuscript, but Turner "denied her request, alleging that no further changes could be made once the publication date was set." ¶ 26. When the book was published, "Petrone was horrified." ¶ 27. There were "serious, embarrassing errors" that she thought had been corrected, ranging from typos "to mistakes in content and photograph exhibits, compromising [the book's] subject matter." *Id.*

Petrone demanded that Turner stop selling the book. ¶ 28. It refused, "blaming Petrone for allegedly failing to follow editorial instructions, including the timeline required to meet the pub date." ¶ 30 (internal quotation marks omitted).

The book remained (and remains) on sale, so Petrone sued. She originally had three claims: *prima facie* tort, intentional infliction of emotional distress, and deceptive trade practices under New York General Business Law § 349. First Am. Compl. ¶¶ 33–48, Dkt. 12. Later, she amended

her complaint to add a defamation claim. Second Am. Compl. ¶¶ 49–57. And she has now aban-doned her deceptive-practices claim. Dkt. 68 at 9.

Turner has moved to dismiss. Under Rule 12(b)(3), it says venue in this district is improper, pointing to a Tennessee forum-selection clause in the publishing agreement between Turner and Petrone's company, Miracle Ball Method LLC. Separately, under Rule 12(b)(6), Turner says the complaint fails to state a claim for any of its causes of action. Because venue is non-jurisdictional and the latter ground is sufficient, the motion to dismiss under Rule 12(b)(6) is GRANTED. The Court need not reach the venue question.

Petrone also has a two-part motion of her own. First, she says she should be granted leave to amend. Second, she seeks sanctions against Turner for its filing errors. Both requests are DENIED.

## LEGAL STANDARDS

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

Given the forum-selection clause mentioned above, Turner says Tennessee law should apply here. But just in case, it also briefed the issues under New York law. Petrone says New York law should apply. Dkt. 68 at 10–13. Petrone's claims fail even under her chosen law, so the Court will assume that New York law applies. *Cf. Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

## DISCUSSION

### I.   The claim for *prima facie* tort fails

The elements of "prima facie tort are (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful." *Freihofer v. Hearst Corp.*, 480 N.E. 2d 349, 355(N.Y. 1985). Another "crit-ical element … is that plaintiff suffered specific and measurable loss." *Id.* And the "sole motive" for the tortious act must be "disinterested malevolence": "a malicious one unmixed with any other and exclusively directed to injury and damage of another." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 451 N.E.2d 459, 468 (N.Y. 1983) (citation omitted).

Petrone's claim fails in two ways. First, she has not alleged specific or measurable losses. She says the amount is "yet to be determined" but that Turner's acts have been "affecting her ability to earn additional income" from her other books and "other professional endeavors." ¶ 37. These allegations are far from the sorts of damages courts have found sufficiently specific, such as lost wages and medical expenses. *See, e.g., Diorio v. Ossining Union Free Sch. Dist.*, 946 N.Y.S.2d

195, 198–99 (N.Y. App. Div. 2012). Instead, they are the kind of "broad and conclusory" allegations that fail to support a claim for *prima facie* tort. *Miller v. Geloda/Briarwood Corp.*, 518 N.Y.S.2d 340, 342 (N.Y. Sup. 1987).

Second, Petrone fails to plausibly allege disinterested malevolence. She says two of Turner's acts are relevant: its decision to rush to publish the book and then its decision not to pull it from circulation. ¶ 34. But she doesn't even attempt to allege disinterested malevolence for the rushed publication. And her own complaint offers other explanations: Turner had just reorganized, her champion was gone, and Turner wasn't thrilled with the work, so they just wanted to keep things moving. ¶¶ 22–26, 50–52 ("Defendant decided to abort the [Miracle Ball Method Project] … at a business opportunity most convenient for the Defendant."). Even drawing inferences in her favor, Petrone has not alleged that Turner was *solely* motivated to harm her. *See Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985) ("[T]he sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff. When there are other motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of *prima facie* tort.").

As for the decision not to pull the book, Petrone says that because "Turner never provided Petrone with any explanation … disinterested malevolence was the only motivation." ¶ 36. But her own complaint refutes that story: she says Turner told her they wouldn't take the book down because she'd failed to follow editorial feedback and deadlines. ¶ 30. Plus, her allegation connecting an unsatisfactory explanation to a sole motive to do harm is conclusory. An obvious alternative explanation is self-interest: Turner made money from book sales, so of course they wouldn't stop selling it. The "sole motiv[e]" standard is deliberately high, and Petrone has failed to meet it. *See Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (N.Y. 1984).

## II.    The claim for intentional infliction of emotional distress fails

Intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993). The first element "filter[s] out petty and trivial complaints" and is "most susceptible to determination as a matter of law." *Id.* The conduct must be "beyond all possible bounds of decency … and utterly intolerable in a civilized community." *Id.* (citation omitted).

Petrone's allegations don't come close. She says Turner's conduct was especially egregious because it knew that the Miracle Ball Method was her life's work. ¶¶ 41–42. But far more outrageous affronts to the most personal (not merely professional) details of one's life have been found to fall short. *See, e.g.*, *Chanko v. Am. Broad. Cos.*, 49 N.E.3d 1171, 1178–80 (N.Y. 2016) (broadcasting final moments of hospital patient's life without his or family's consent); *Doe v. Am. Broad. Cos.*, 543 N.Y.S.2d 455, 456 (N.Y. App. Div. 1989) (broadcasting images of rape victims after saying they would be kept anonymous); *Conklin v. Laxen*, 180 A.D.3d 1358, 1360–61 (N.Y. App. Div. 2020) (ruining plaintiff's "professional standing" by falsely accusing her of euthanizing

healthy cats). If these nonconsensual publications weren't sufficiently outrageous, Turner's flawed publication isn't either.

Petrone seems to acknowledge that she cannot meet the standard. Instead, she invites the Court to revisit New York state-law precedents that she sees as "ripe for correction" given our "age dominated by Internet … calling into question standard definitions of words and concepts associated with life in a civil society" such that "even the definition of 'woman' has been relegated to the swamp of relativity." Dkt. 68 at 16. Despite that impassioned plea, it is not this Court's place to second-guess decisions of the New York Court of Appeals on questions of New York law.

## III.    The defamation claim fails

"The elements [of defamation] are [1] a false statement, [2] published without privilege or authorization to a third party, [3] constituting fault as judged by, at a minimum, a negligence standard, and [4] it must either cause special harm or constitute defamation per se." *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999). The statement must also be "of and concerning" the plaintiff. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). Here, Petrone solely pleads a claim of defamation per se. Second Am. Compl. at 9.

Petrone has failed to allege (at least) a false statement of and concerning Petrone. Turner never made a statement about Petrone at all. Connecting the dots for her, Petrone's theory seems to be this: Because she didn't approve them, the errors in the book are really Turner's statements. And they are falsities, so Turner made false statements. But readers blame authors for substantive errors. So the false statements "concern" Petrone. Petrone cites no authority for this remarkable double bank shot. And it fails in at least two ways. First, Petrone points to "errors in content, layout and text," but she has not identified a single "false statement." ¶ 54. Second, Petrone hasn't explained how readers' misattributing errors in the book *to* her is the same as Turner making a false statement *about* her. *Cf. Statement*, *Black's Law Dictionary* (11th ed. 2019) ("verbal assertion or nonverbal conduct intended as an assertion"). As the Second Circuit observed in *Kirch*, "the 'of and concerning' requirement stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them." *Kirch*, 449 F.3d at 399–400. Petrone has not met that limitation here.

Taking a step back, Petrone's theory actually appears to be one of false association. That claim is a species of the false-light tort. It "involve[s] the attribution to the plaintiff of a false association with some activity, statement, opinion, or work product.… [I]t has been followed in cases of … false attribution of beliefs, writings or statements." 2 *Law of Defamation* § 10:18 (2d ed. 2023). Though Petrone's allegations might align with that cause of action, "New York does not recognize such a common-law tort." *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Pub.*, 727 N.E.2d 549, 556 (N.Y. 2000).

* * * * *

While Petrone's claims fail here, the Court observes that her company does have a publishing agreement with Turner, and many of the allegations in the complaint sound in breach of that contract. To the extent that Petrone or her company have valid claims under the contract with Turner, they may raise those claims in the appropriate forum and under the law governing the contract. However, Petrone's attempt to contort her allegations to fit the torts she is pursuing cannot be sustained.

## IV.   Petrone's cross-motion fails

### A.   A third amendment would be futile and is unjustified

Petrone seeks leave to amend the complaint for a third time. The Court may grant such leave "when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice does not require amendment when it would be futile. *See Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 251 (2d Cir. 1994). The Court is also unlikely to permit amendment when the request is conclusory and does not explain how the new material would cure any of the shortcomings alleged in a motion to dismiss. *See WC Cap. Mgmt., LLC v. UBS Sec., LLC*, 711 F.3d 322, 334 (2d Cir. 2013).

Here, Petrone seeks leave to "correct deficiencies" and "integrate Letters #1 and #2." Dkt. 68 at 20. But Petrone fails to identify the additional allegations she could make that would address the deficiencies identified above. As for the Letters, these simply document the timelines for the rest of the books in the series and additional edits to the second book. Dkt. 68-5 to -6. Petrone has not explained how they would change the legal analysis, nor can the Court see how they would.

### B.   The filing issues were mutual and immaterial

Finally, Petrone moves for sanctions against Turner's counsel. She appeals to this Court's inherent power and to 28 U.S.C. § 1927. Both require that Turner's counsel did something "unreasonabl[e] and vexatious[]." 28 U.S.C. § 1927; *see Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980).

Petrone complains that Turner defectively filed its first motion to dismiss. That error, combined with a later change of counsel, resulted in unnecessary expense: the motion was fully briefed but left undecided, so the new counsel filed an answer, and the parties engaged in discovery. Once the Court spotted the issue, it permitted Petrone to amend her complaint and asked whether Turner would again move to dismiss. Dkt. 68 at 21. After another month in which Petrone failed to file the amended complaint, the Court ordered her to do so. Dkt. 60. She filed it after two defective attempts of her own. Dkts. 61–62. Turner then filed its motion to dismiss after just one defective attempt. Dkts. 64–65.

Needless to say, neither party is blameless. Both sides had issues with the electronic filing system. And Petrone has a responsibility to promptly notify opposing counsel or the Court when the docket is in disrepair. Waiting on the Court to find the issue and then seeking sanctions is

useless gamesmanship. Though Turner is similarly admonished to pay attention, these issues do not show vexatiousness.

Nor did Turner fail to follow court orders, as Petrone alleges. The docket notifications directing counsel to re-file certain documents come from the Clerk of Court's office. They are intended for counsel's benefit, though they can evidently fall on deaf ears. Next time, counsel are encouraged to review the comprehensive ECF Rules and Instructions, prepared by the excellent Clerk's office staff: https://www.nysd.uscourts.gov/rules/ecf-related-instructions.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. 65) is GRANTED. Plaintiff's claims are DISMISSED WITH PREJUDICE. Plaintiff's cross-motion (Dkt. 68) is DENIED. The parties' joint letter motion to stay discovery (Dkt. 71) is DENIED as moot. The Clerk of Court is directed to enter judgment for Defendants and close this case.

SO ORDERED.

Dated: November 6, 2023
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge